## PAUL v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Second Department. May 29, 1902.)

1. TRIAL—MOTION FOR VERDICT—SUBMISSION TO JURY—WAIVER.
   Where the parties each move for the direction of a verdict, all right to have any question of fact submitted to the jury is waived.

2. CONTRACTS—SECURING FREIGHT BUSINESS—BREACH—CONTRACT WITH OTHER CARRIER.
   Plaintiff was under contract with defendant railroad to use for a term of years his best efforts to increase the carriage of milk over defendant's line, he to receive a percentage on freights. Subsequently, with the con-

sent of the defendant's president, plaintiff contracted with the N. road to endeavor to increase the carriage of milk over its lines west of a certain point, the contract containing a clause to the effect that, if plaintiff desired, a further contract would be made covering another portion of the line. *Held*, that the subsequent making of such a contract as contemplated by the contract with the N. road was no breach of the contract with defendant, the assent of its president to the first contract with the N. road being an assent to the contract contemplated therein.

8. SAME—DAMAGES.

Where plaintiff, while under contract with defendant railroad to endeavor to build up the carriage of milk over its lines, he to receive a percentage on freights, made a similar contract with another road, the making of such contract did not preclude him from recovering his percentage on freights subsequently earned by defendant, where no damage to defendant was shown by plaintiff's performance of his contract with the other road.

Appeal from trial term, Kings county.

Action by John H. Paul against the Delaware, Lackawanna & Western Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Hamilton Odell, for appellant.
Augustus Van Wyck, for respondent.

WILLARD BARTLETT, J. This litigation grows out of a written contract made on July 19, 1886, between Robert E. Westcott and the Delaware, Lackawanna & Western Railroad Company. The plaintiff sues as the assignee of Westcott. By the contract Westcott agreed for a period of 10 years to use his best endeavors to build up, develop, increase, facilitate, and conduct the business of the transportation of milk over all the lines owned, controlled, or leased by the railroad company. Westcott undertook to charge freight at rates not in excess of those charged by competing railroads for similar service; to render to the defendant every month correct statements of all charges collected for milk transportation during the preceding month; and to pay to the defendant 80 per cent. thereof, retaining 20 per cent. in full compensation for all his services in the business. On the other hand, the defendant, by the express terms of the contract, granted to Westcott the exclusive privilege of transporting milk over its lines so far as it was permitted to do so by law. On September 30, 1892, the contract was further extended for five years to July 9, 1901. Under this contract Westcott built 103 creameries along the lines of the defendant's road, and up to the seventh year expended, in erecting creameries and conducting the business, a sum in excess of $200,000. In the year in which the contract was made the defendant carried only 140,300 cans of milk. In 1898 the business under Westcott's administration had increased so that 2,093,000 cans were transported. Creameries were established by Westcott at every point where there was sufficient available territory; that is to say, at any point on the railroad where there were 300 or 400 cows within a radius of

four miles from a station. Westcott testified that, while a creamery would not pay with that number of cows, it was apt to grow to a paying basis from that number. In July, 1896, Westcott entered into a contract in writing with the New York Central & Hudson River Railroad Company, whereby he agreed to build or cause to be built at his own expense the necessary creameries, and to use his best endeavors to build up, develop, increase, facilitate, and conduct the business of transporting milk, cream, and buttermilk to Weehawken over all the lines of the West Shore Railroad west of Ravenna, a station 13 miles south of Albany. This contract was made with the approval of Samuel Sloan, the president of the Delaware, Lackawanna & Western Railroad Company, who examined it, and assented to it, before it was executed. It contained, among other things, the following provision in the tenth article thereof:

"That the party of the first part having offered to make with the party of the second part a contract for the handling of milk traffic from points on the New York Central Railroad proper west of Albany to the city of New York, and the party of the second part having declined to enter into the same, it is agreed that, should said party of the second part hereafter, within the term of this contract, determine to develop the milk traffic to New York from that section over its lines east of the Hudson river, it will enter into a similar contract with the party of the first part for the new traffic west of Albany, and also make the present contract from points west of Ravenna operative by its lines east of the Hudson river via Albany or some other junction."

In July, 1898, Westcott entered into a second contract with the New York Central & Hudson River Railroad Company, such as was contemplated by the foregoing provision in the tenth article of the first contract with that corporation. By this second contract he agreed, among other things, to build or cause to be built, at his own expense, the necessary creameries, and to use his best endeavors to build up, develop, increase, facilitate, and conduct the business of transporting milk, cream, and buttermilk to the city of New York over all the lines of railroad owned or leased by the New York Central corporation west of Albany. Westcott did not speak to Mr. Sloan about this second contract, and testified that he regarded it the same as the other; evidently meaning that it was embraced in the consent which Mr. Sloan gave to the execution of the first contract with the New York Central corporation, the tenth article of which expressly provided for the making of such further agreement. Under these two contracts with the New York Central & Hudson River Railroad Company, Westcott erected 16 creameries along the West Shore, and 40 other creameries on the New York Central and its branches. In 1899, Mr. William H. Truesdale, who had succeeded Mr. Sloan in the presidency of the Delaware, Lackawanna & Western Railroad Company, proposed to Westcott to revise his contract with that corporation. This Westcott declined to do, but at Truesdale's request he consented to a modification thereof, whereby the defendant was allowed to collect the freights from July 1, 1899, instead of Westcott, upon the undertaking of Truesdale that the defendant would account to him monthly, and pay over to him his

20 per cent. of the collections. Under this modification the defendant corporation collected in the seven months from July, 1899, to January, 1900, inclusive, an amount, 20 per cent. of which, with interest, equals $77,648.02, for which sum the trial court directed the jury to find a verdict in favor of the plaintiff, as the assignee of Westcott. From the judgment entered upon this verdict the defendant has appealed.

At the close of the evidence on both sides each party moved for the direction of a verdict, thus waiving all right to have any question of fact submitted to the jury,. and virtually submitting to the determination of the trial judge all questions of fact as well as of law. Clason v. Baldwin, 152 N. Y. 204, 46 N. E. 322. Defendant's liability to pay over to Westcott 20 per cent. of the freight on milk which it collected after the modification of its contract with him was disputed on the ground that prior to the time when said moneys became due Westcott deliberately violated his contract by entering into another contract of a like character with the New York Central & Hudson River Railroad Company under date of July 1, 1898 (being the second contract with that corporation heretofore mentioned), by which he undertook and agreed to render to the New York Central corporation the very service, skill, and efforts which he had promised and pledged to the defendant. By reason of Mr. Sloan's assent to the first New York Central contract, the defendant was not in a position to question, nor did it question, the propriety of Westcott's action in developing the milk transportation business along the West Shore line west of Ravenna; but it confined its objection to the second contract, made on July 1, 1898, provided for in the tenth article of the first New York Central contract, and relating to lines east of the Hudson river. It seems to me that there are two valid answers to the contention of the appellant in this respect. In the first place, the tenth article of the first contract between the New York Central corporation and Westcott distinctly and unequivocally contemplated the subsequent making of just such an agreement as was embodied in the second contract; and when Mr. Sloan, as president of the Delaware, Lackawanna & Western Railroad Company, assented to the execution of that first contract by Westcott, his assent must be deemed to have been a waiver of any objection on the part of his company to the making of such second contract in case Westcott should conclude to enter into it. In the second place, irrespective of this consent, the evidence warranted the trial judge in finding that Westcott did nothing under either of the New York Central contracts which worked any injury to the defendant, or lessened the value of its contract with him. There was no such proximity between the creameries established by Westcott on the defendant's lines and the creameries established by Westcott on the New York Central lines as to cause them to interfere with one another, so far as the transportation of milk was concerned, and there was no proof that the defendant suffered damage to the extent of a single dollar by reason of Westcott's services to the New York Central corporation. Upon all the proof in the case, I think that the plaintiff was entitled to the ver-

dict which was directed in his favor, and that. the judgment, there-
fore, should be affirmed.

Judgment and order affirmed, with costs. All concur.